IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTOPHER CROWE, an individual,<br><br>Plaintiff,<br>v.<br><br>OREM CITY, a Utah Municipal Corporation and JOHN DOES 1-3, heretofore unidentified officers of Orem City,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT OREM CITY'S MOTION TO DISMISS<br><br>Case No. 2:26-cv-00004-TS-DAO<br><br>District Judge Ted Stewart<br>Magistrate Judge Daphne A. Oberg |

This matter comes before the Court on Defendant Orem City's Motion to Dismiss.[1] The Court will grant the Motion, and will allow Plaintiff leave to amend, as detailed below.

## I. BACKGROUND[2]

Plaintiff Christopher Crowe files suit against Orem City and unidentified officers of Orem City, for false arrest and false imprisonment and for violation of his constitutional rights under 42 U.S.C. § 1983.

In June 2023, Plaintiff's long-term relationship with Julie Bradshaw had turned tumultuous and Ms. Bradshaw contacted Orem City asking for a trespass order against Plaintiff. An officer made contact with Plaintiff and they had a discussion in which Plaintiff maintained that the interactions with Ms. Bradshaw were consensual. Plaintiff reported that Ms. Bradshaw

[1] Docket No. 5.

[2] The following facts are taken from Plaintiff's Complaint and are accepted as true for the purposes of this Motion.

had physically assaulted him. The officer did not issue a trespass order or any other written or verbal notice restricting Plaintiff's access to Ms. Bradshaw's property.

In October 2023, Ms. Bradshaw invited Plaintiff to her home. However, when he arrived, she was not there, which she confirmed to Plaintiff via phone call. She subsequently contacted the Orem City Police Department to report that Plaintiff was at her home. Orem City officers responded and confronted Plaintiff, immediately placing him in handcuffs. Plaintiff denied the trespass allegation and explained that Ms. Bradshaw had invited him to the home. He showed the officers text messages to that effect. The officers then released Plaintiff from the handcuffs.

Thereafter, the officers questioned Plaintiff further about an allegation that he tampered with Ms. Bradshaw's garage door openers. Plaintiff explained that he had reprogrammed the openers at Ms. Bradshaw's request. One officer accused him of lying and officers again placed Plaintiff in handcuffs. He was not formally placed under arrest and he was not placed in handcuffs for officer safety.

At some point thereafter, Ms. Bradshaw told the officers that she had in fact asked Plaintiff to reprogram her garage door opener. The officers then released Plaintiff from the handcuffs. During this police encounter, Plaintiff reported again that Ms. Bradshaw had physically assaulted him, but no complaint or investigation was undertaken by police.

Plaintiff filed this suit in October 2025 in Utah state court. Orem City then removed the case to this Court on January 5, 2026, and thereafter, filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

When evaluating a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all well-pleaded factual allegations, as distinguished from

conclusory allegations, as true and views them in the light most favorable to the non-moving party.[3] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[4] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6]

## III. DISCUSSION

### A. Section 1983 Claim

42 U.S.C. § 1983 provides, in relevant part

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."[7] "To establish a cause of action under [§] 1983, a plaintiff must allege (1) deprivation of a federal right by (2) a person acting under color of state law."[8]

---

[3] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

[7] *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

[8] *Watson v. Kan. City*, 857 F.2d 690, 694 (10th Cir. 1988).

Further, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[9] "Instead, the government as an entity may only be held liable when execution of a government's policy or custom whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury."[10] Additionally, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."[11]

Therefore, to survive dismissal, Plaintiff's § 1983 claim against Orem City must sufficiently plead both (1) a deprivation of a federal right, and (2) that Orem City's policy or custom was the moving force behind the deprivation.

1. Deprivation of Plaintiff's Federal Rights

Plaintiff alleges that he was deprived of his Fourth Amendment rights when officers subjected him to unreasonable seizure, detention, and use of handcuffs without probable cause.[12] Plaintiff also alleges that his equal protection rights were violated when officers failed to investigate or document his reports of physical assault by Ms. Bradshaw.[13]

Defendant argues that the Complaint fails to plead a deprivation of Plaintiff's Fourth Amendment rights because the officers had both probable cause to arrest him and reasonable suspicion to temporarily detain him using handcuffs.

---

[9] *Waller v. City & Cnty. of Denv.*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

[10] *Id.* (internal quotation marks and citation omitted).

[11] *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

[12] Docket No. 1-4 ¶ 61.

[13] *Id.* ¶ 63.

The Fourth Amendment of the United States Constitution establishes a constitutional right for people to be "secure in their persons . . . against unreasonable . . . seizure[s]."[14] "In applying the Fourth Amendment's protections against unreasonable searches and seizures, the Supreme Court has recognized three types of police-citizen encounters: consensual encounters, investigative detentions, and arrests."[15] Investigative detentions or *Terry* stops,[16] "which are Fourth Amendment seizures of limited scope and duration . . . must be supported by a reasonable suspicion of criminal activity."[17] Reasonable suspicion "is not . . . meant to be an onerous standard."[18] "To satisfy the reasonable suspicion standard, an officer need not rule out the possibility of innocent conduct, or even have evidence suggesting a fair probability of criminal activity."[19] Instead, the officer must only have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot."[20]

Warrantless arrests, "the most intrusive of Fourth Amendment seizures . . . [are] reasonable only if supported by probable cause."[21] "Probable cause to arrest exists only when the facts and circumstances within the officer's knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a [person] of reasonable caution

---

[14] U.S. Const. amend. IV.

[15] *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011).

[16] *See Terry v. Ohio*, 392 U.S. 1 (1968).

[17] *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) (quoting *United States v. Hammond*, 890 F.3d 901, 904 (10th Cir. 2018)).

[18] *United States v. Kitchell*, 653 F.3d 1206, 1219 (10th Cir. 2011) (internal quotation marks and citation omitted).

[19] *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015) (internal quotation marks and citations omitted).

[20] *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (internal quotation marks and citation omitted).

[21] *Hemry*, 62 F.4th at 1253 (quoting *Hammond*, 890 F.3d at 904).

in the belief that an offense has been or is being committed."[22] The court "conduct[s] a fact-intensive inquiry to distinguish between arrests and *Terry* stops . . . consider[ing] both the officers' forceful measures and the detention's length."[23]

"If a police-citizen encounter exceeds the limits of a *Terry* stop, the detention becomes an arrest that must be supported by probable cause."[24] "In determining the permissible scope of an investigative detention, the court does not 'engage in unrealistic second-guessing' of a police officer's decision."[25] "[A] *Terry* stop does not become unreasonable just because police officers use handcuffs on a subject."[26] "Since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their personal safety *and* to maintain the status quo during the course of a *Terry* stop."[27] "The hallmark of the Fourth Amendment is reasonableness."[28] Thus, "[a]s long as the precautionary measures employed by officers during a *Terry* stop are reasonable, they will be permitted without a showing of probable cause."[29] The question for the Court is therefore, "would the facts available to the officer at the moment of the seizure . . . 'warrant a man of reasonable caution in the belief' that the action was appropriate."[30]

---

[22] *Cortez*, 478 F.3d at 1116 (internal quotation marks and citation omitted).

[23] *Hemry*, 62 F.4th at 1254.

[24] *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002).

[25] *Chatwin v. Barlow*, No. 2:06-CV-00291DAK, 2008 WL 501109, at *7 (D. Utah Feb. 20, 2008) (quoting *Neff*, 300 F.3d at 1220).

[26] *Neff*, 300 F.3d at 1220.

[27] *Id.* (internal quotation marks and citation omitted) (emphasis added).

[28] *Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1030 (10th Cir. 1997).

[29] *Id.*

[30] *Id.* at 1030–31 (quoting *United States v. McRae*, 81 F.3d 1528, 1536 (10th Cir. 1996)).

Defendant argues that the facts alleged in the Complaint establish that officers had reasonable suspicion to detain Plaintiff and probable cause to arrest him for the offense of criminal trespass. Under Utah law, an actor commits criminal trespass if,

> (a) the actor enters or remains unlawfully on . . . property and:
>
> > (i) intends to cause annoyance or injury to any person or damage to any property . . . ;
> >
> > (ii) intends to commit any crime, other than theft or a felony; or
> >
> > (iii) is reckless as to whether the actor's . . . presence will cause fear for the safety of another.
>
> (b) knowing the actor's . . . entry or presence is unlawful, the actor enters or remains on . . . property to which notice against entering is given by . . .
>
> > personal communication to the actor by the owner or someone with apparent authority to act for the owner . . . .[31]

Defendant asserts that the officers had probable cause that Plaintiff committed criminal trespass because, as alleged in the Complaint, Ms. Bradshaw reported that Plaintiff was trespassing on her property and when officers responded, they found Plaintiff present on Ms. Bradshaw's property. The Court agrees that the facts as pled in the Complaint establish that officers had probable cause to arrest Plaintiff, and thus reasonable suspicion to detain him, the first time he was placed in handcuffs.

Defendant also argues that the officers had probable cause to arrest Plaintiff for criminal trespass when they handcuffed him the second time. The Complaint alleges that after reviewing exculpatory evidence provided by Plaintiff, he was released from handcuffs, but officers continued to question him about allegedly tampering with Ms. Bradshaw's garage door openers.

[31] Utah Code Ann. §§ 76-6-206(2)(a)–(b)

Defendant asserts that the following facts taken from the Complaint are sufficient to establish probable cause of criminal trespass: previous reports of violence and trespass between Plaintiff and Ms. Bradshaw; Ms. Bradshaw's report that Plaintiff was unlawfully on her property; Plaintiff remained on Ms. Bradshaw's property when officers arrived; the allegation that Plaintiff tampered with Ms. Bradshaw's garage door openers; and that Plaintiff admitted to reprogramming the openers, although he said he did it at her request.[32]

The Court finds that these facts do not alone conclusively establish that the officers had probable cause to arrest Plaintiff for criminal trespass. The Complaint further does not contain any facts supporting that it was reasonably necessary to handcuff Plaintiff to protect the officers' personal safety and to maintain the status quo during the stop. Thus, the Complaint plausibly pleads that the *Terry* stop became unreasonable when the officers placed handcuffs on Plaintiff for the second time, transforming it into an arrest, which as plausibly alleged in the Complaint, was not supported by probable cause. The Court therefore concludes that Plaintiff sufficiently pleads that officers violated his Fourth Amendment rights when they committed an unreasonable seizure.

The Court next turns to Plaintiff's allegation that officers violated his equal protection rights when they failed to further investigate or document his reports that Ms. Bradshaw assaulted him. "Equal protection is essentially a direction that all persons similarly situated should be treated alike."[33] "[T]o assert a viable equal protection claim, [a] plaintiff[] must first make a threshold showing that they were treated differently from others who were similarly

[32] Docket No. 8, at 3–4.

[33] *Grace v. United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (internal quotation marks and citation omitted).

situated to them."[34] The Complaint pleads that the officers' failure "to investigate or document [Plaintiff's] reports of physical assault by Ms. Bradshaw, demonstrate[es] deliberate indifference to [his] equal protection and access to law enforcement services."[35] The Complaint does not include any allegations that he was treated differently from similarly situated persons.

To the extent that Plaintiff is attempting to assert a class-of-one claim, a complaint must plead that others "similarly situated in every material respect were treated differently."[36] "A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive, and wholly unrelated to any legitimate state activity."[37] The Complaint fails to plead any facts to support such a claim.

2. Municipal Liability

"There are three requirements to assert municipal liability under 42 U.S.C. § 1983: (1) the existence of an official policy or custom; (2) a direct causal link between the policy or custom and the constitutional injury; and (3) that the defendant established the policy with deliberate indifference to an almost inevitable constitutional injury."[38] The "municipal policy or custom" may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the

---

[34] *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998).

[35] Docket No. 1-4 ¶ 63.

[36] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1201, 1216 (10th Cir. 2011) (internal quotation marks and citation omitted).

[37] *Id.* (internal quotation marks and citations omitted).

[38] *Soto v. Bd. of Cnty. Comm'rs of Caddo Cnty.*, 748 F. App'x 790, 793–94 (10th Cir. 2018) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–70 (10th Cir. 2013)).

> basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[39]

"A single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability."[40]

Defendant argues the Complaint "does not identify any official rule, any widespread or entrenched practice, or any specific training deficiency that allegedly caused the encounter he describes,"[41] and it fails to adequately plead a causal connection between a policy or custom and the alleged constitutional injury.

The Complaint alleges that Orem City failed to train its officers on the appropriate use of force and permitted them to use handcuffs as an improper interrogation technique.[42] It further alleges that the officers' Fourth Amendment violations resulted from "official policies, practices, or customs, or from failure to adequately train and supervise its officers."[43]

The Court agrees that these allegations fail to adequately allege a link between a policy or custom and the alleged injury. These allegations are the type of "formulaic recitation[s] of the elements of a cause of action" that are insufficient to meet the pleading standard under *Twombly*.[44] The Court will therefore grant the Motion. However, it does appear possible that Plaintiff could state a plausible claim for municipal liability under § 1983, accordingly, the Court

---

[39] *Waller*, 932 F.3d at 1283 (internal quotation marks and citation omitted).

[40] *Soto*, 748 F. App'x at 794 (internal quotation marks and citation omitted).

[41] Docket No. 5, at 12.

[42] Docket No. 1-4 ¶ 50.

[43] *Id.* ¶ 65.

[44] 550 U.S. at 555.

will allow Plaintiff leave to amend the Complaint if he wishes to do so. Plaintiff may also amend his Complaint as to the constitutional violations.

B. False Arrest and False Imprisonment Claim

Orem City argues that it is immune from state law claims under the Governmental Immunity Act of Utah.[45] Plaintiff does not dispute that Orem City is immune from the state law claims. As such, the Court will dismiss this claim against Orem City with prejudice.

C. Claims against unnamed officers

"Courts have generally recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served."[46] However, "[i]t is incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants in order to make out a viable § 1983 . . . claim."[47] Therefore, to sustain claims against the unnamed officers, Plaintiff must amend his Complaint to provide sufficient information to identify the unnamed officers and the specific allegations as to each officer.

---

[45] Utah Code Ann. § 63G-7-101(3).

[46] *Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996) (citations omitted).

[47] *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (internal quotation marks and citation omitted).

## IV. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 5) is GRANTED; it is further

ORDERED that Plaintiff has thirty (30) days to file an amended complaint as detailed in the Order.

DATED September 28, 2026.

BY THE COURT:

TED STEWART
United States District Judge